1
2
3
4
5
6
7
8        **UNITED STATES DISTRICT COURT**
9        **SOUTHERN DISTRICT OF CALIFORNIA**
10

11 | PROFIL INSTITUT FUR STOFFWECHSELFORSCHUNG GMBH, | CASE NO. 16cv1549-LAB (BLM)

12 | Plaintiff, | **ORDER DISCHARGING ORDER TO SHOW CAUSE; AND**

13 | vs. |

14 | | **ORDER GRANTING IN PART AND DENYING MOTION TO DISMISS**

15 | PROSCIENTO, INC., |

16 | Defendant. | **[Docket number 17.]**

17
18

19    This is one of two related cases involving intellectual property disputes between these

20 parties.  Both cases concern the "Profil" trademark; this case also alleges misappropriation

21 of trade secrets.  In case 16cv1549, Plaintiff Profil Institut für Stoffwechselforschung GmbH

22 ("Profil") is suing its onetime subsidiary ProSciento, Inc. (formerly known as Profil Institute

23 for Clinical Research, Inc.)  for trademark infringement.  ProSciento recently filed a

24 counterclaim.  There are two "Profil" marks at issue, one a U.S. mark and one an EU mark,

25 but the briefing suggests that use of each mark is not limited to the place of its registration,

26 and that there is some spillover into the other mark's territory.

27 / / /

28 / / /

**Partial Mootness**

The Court is obligated to address jurisdictional issues even if the parties do not raise them.  *See Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 278 (1977).  At a hearing in the related case, 16cv2762, *Profil Institut für Stoffwechselforschung GmbH v. Prosciento, Inc.*, the Court held a hearing on Profil's motion for a preliminary injunction involving alleged trademark infringement in the EU.  At that hearing, Defendant's counsel announced that the company was changing its name to ProSciento.  The Court accepted this representation and concluded that, going forward, ProSciento would be unlikely to use the "Profil" trademark in the EU and would be abandoning further use of the trademark.  In light of this, the Court ordered the parties to show cause why claims for injunctive relief concerning use of the trademark were not moot. (Docket no. 32.)

Before either party filed briefing, ProSciento filed a motion for a preliminary injunction, claiming that it owns the trademark and asking the Court to enjoin Profil from using it.  The Court denied the motion without prejudice, noting that ProSciento had no counterclaim pending, and that mootness had not yet been addressed. The parties filed responses to the Court's order to show cause, saying that ownership of the mark is still being actively disputed and that ProSciento intends to keep using it in the U.S. This change in position causes concern; a party should not benefit from contradictory factual assertions.   But the circumstances do not suggest an intent to mislead the Court.  The Court accepts that the parties both intend to use the mark in the United States, and its ownership is actively contested. The order to show cause is therefore **DISCHARGED**.

**Motion to Dismiss**

ProSciento filed a motion under Fed. R. Civ. P. 12(b)(6) (Docket no. 17) to dismiss the amended complaint (the "FAC"). Three agreements which were mentioned in the amended complaint are attached as exhibits were attached to the motion.  (Docket no. 17-2.) Profil does not dispute these documents' authenticity or object to the Court's considering them in connection with the motion; in fact, its own briefing refers to these documents and relies on them.

**Judicial Notice**

The motion was accompanied by requests for judicial notice under Fed. R. Evid. 201. Most of the documents (Exhibits A through I) are journal articles. Profil objects to the Court's taking notice of those, and points out they are not authenticated. Profil does not object to the Court's taking notice of Exhibits J or K, which are records from the U.S. Patent and Trademark Office (USPTO).

The journal articles are offered to show that certain alleged trade secrets are not in fact secret, and that the information has been made public through articles like these. "Courts may take judicial notice of publications introduced to indicate what was in the public realm at the time . . . ." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010). Profil is correct that these articles have not been authenticated. *See Madeja v. Olympic Packers, LLC*, 310 F.3d 628, 639 (9th Cir. 2002) (district court was not required to take notice of unauthenticated documents). Profil also argues that while the articles cover generally the same subject matter as the trade secrets, the trade secrets include information not in the articles. Assuming this is true, the articles would not be helpful at this stage of litigation. The request for judicial notice of Exhibits A through I is therefore **DENIED**. But Exhibits J and K meet the standards for notice under Fed. R. Evid. 201, and the unobjected-to request for judicial notice of those exhibits is **GRANTED**.

**Legal Standards for Motion to Dismiss**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Under Fed. R. Civ. P. 8(a)(2), only "a short and plain statement of the claim showing that the pleader is entitled to relief," is required, in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). The well-pleaded facts must do more than permit the Court to infer "the mere possibility of conduct"; they must show that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

When determining whether a complaint states a claim, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most

favorable to the non-moving party. *Cedars-Sinai Medical Center v. National League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007) (citation omitted). At the pleading stage, the Court may consider not only the complaint itself, but also documents it refers to, whose authenticity is not questioned, and matters judicially noticed. *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

ProSciento raises the statute of limitations as a defense. A claim may be dismissed as untimely on a Rule 12(b)(6) motion only when the running of the statute of limitations is apparent on the face of the complaint. *United States ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013).

If a motion to dismiss is granted, leave to amend is ordinarily granted unless amendment would be futile. *Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir.2000) (en banc).

**Factual Background**

Profil, a German entity, was ProSciento's parent corporation. The two companies are in the business of medical research. In 2003, Profil created ProSciento (then Profil Institute for Clinical Research) as a subsidiary. In 2008, the companies formally separated, but worked together under a Cooperation Agreement that terminated in 2012. The Cooperation Agreement is attached to ProSciento's motion to dismiss as Exhibit A. One of the agreement's provisions was that the companies' work would be coordinated, and that they would each use a similar logo that incorporated the word "Profil". Profil alleges it owned the "Profil" mark at this time, and was granting ProSciento a license to use it.

In 2009, ProSciento filed an application to register the "Profil" mark in the United States. Also in 2009, the two companies entered into a Lease Agreement for devices known as Biostators. The Lease Agreement is attached to the motion to dismiss as Exhibit B. Profil says it developed and owned trade secrets regarding use of Biostators and related technology and procedures, and that both the Cooperation Agreement and the Lease Agreement included provisions intended to protect trade secrets. (FAC, ¶ 26.)

/ / /

After the Cooperation Agreement terminated, the parties entered into a Non-Disclosure Agreement ("NDA"). The NDA is attached as Exhibit C to the motion to dismiss. It included a provision concerning the protection of Profil's interest in trademarks and trade secrets.

Profil alleges that ProSciento fraudulently registered the "Profil" mark with the USPTO by falsely claiming it had used the mark first, when in fact Profil had. Profil alleges ProSciento falsely claimed its first use of the mark occurred on December 31, 1999, before ProSciento was even formed. Profil alleges other false statements regarding the first use of that mark. (FAC, ¶¶ 46-52.) ProSciento did not tell Profil it was attempting to register the mark, and Profil first discovered the registration attempt "in or about 2010". (*Id.* ¶¶ 5, 53.) The registration was issued on May 17, 2011.

The two companies' relationship soured, and beginning May 18, 2016, ProSciento made it clear it intended to compete with Profil. (FAC, ¶¶ 5-6.) Profile filed this action on June 20, 2016, bringing the following claims:

Claim 1, for a declaration that Profil is the mark's prior user and owner;

Claim 2, for cancellation of the mark as invalid based on Profil's first use and ownership;

Claim 3, for cancellation of the mark for fraud in its procurement;

Claim 4, for cancellation of the mark for misuse;

Claim 5, for trademark infringement and unfair competition under California law;

Claim 6, for trade secret misappropriation under federal law; and

Claim 7, for trade secret misappropriation under California law.

ProSciento's motion seeks dismissal of claims 2, 3, 6, and 7 with prejudice.

**Discussion**

To a great extent, the standard for ruling on motions to dismiss controls the outcome of this motion. Much of what ProSciento's motion asks the Court to do is inappropriate at the pleading stage.

/ / /

**Incontestability**

ProSciento argues Claims 2 and 3 are barred because the trademark is now incontestable under 15 U.S.C. § 1065.  Profil does not dispute that the mark has achieved incontestability, but argues that exceptions apply.

With regard to Claim 2, Profil argues that incontestability is not valid against the senior user of the mark.  Although there is some inconsistency in decisional law, the law of this Circuit favors Profil's position. *See Kabushiki Kaisha Megahouse v. Anjar Co. LLC*, 2014 WL 5456523 at *5 (C.D. Cal., Oct. 20, 2014) (discussing conflicting authority).

The Ninth Circuit has explained that "the label of 'incontestability' is rather misdescriptive," and that "[a]n incontestable registration is still subject to certain defenses or defects, set forth in 15 U.S.C. § 1115 . . . ."  *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 603 (9th Cir. 2005).  Among the defects that provide an exception are claims "[t]hat the registration or the incontestable right to use the mark was obtained fraudulently . . . ." § 1115(b)(1).  Because fraud in registration or procurement of incontestability is an exception to incontestability, Claim 3 is not barred.

**Statute of Limitations**

ProSciento also argues that Claims 6 and 7 are time-barred, because both the federal and state limitations periods for trade secrets misappropriations claims are three years and the alleged misappropriation began four years ago.  It cites *Intermedics, Inc. v. Ventritex, Inc.*, 822 F. Supp. 634, 653 (N.D. Cal. 1993) and *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1110 (N.D. Cal. 2012), arguing that the claim accrues as of the first misappropriation.  The limitations period runs from the time alleged misappropriation is actually discovered, or with the exercise of reasonable diligence should have been discovered, and a continuing misappropriation constitutes a single claim.  Cal. Civ. Code § 3426.6; 18 U.S.C. §1836(d).

Although the Cooperation Agreement allowed ProSciento to use the alleged trade secrets, it continued to use them continuously after the agreement was terminated, around April 4, 2012.  If its use amounted to misappropriation, ProSciento argues that the claim

1   accrued shortly after the Cooperation Agreement was terminated, and Profil had three years

2   from that time to bring suit.  ProSciento maintains that the FAC fails to allege facts that would

3   suggest Profil was unable to discover the misappropriation, and therefore has not pled facts

4   suggesting it is entitled to tolling.

5       Statutes of limitations are an affirmative defense, Fed. R. Civ. P. 8(c), and a plaintiff

6   is not required to plead facts in anticipation of it.  *Unique Functional Products, Inc. v. JCA*

7   *Corp.*, 2012 WL 1416201, at *2 (S.D. Cal., Apr. 23, 2012).

8       ProSciento asks the Court to conclude that Profil was failed in its obligation to

9   investigate reasonable suspicions of misappropriation.  (Docket no. 17-1 at 19:11-21.)  The

10  FAC does not, however, make plain that "even the most cursory investigation" (id. at 19:16)

11  would have revealed misuse of the Biostators.  Nor can the Court conclude that because the

12  Cooperation Agreement had terminated, the parties' cooperative relationship had ended, as

13  ProSciento argues.   For example, after it was terminated, the parties entered into the NDA

14  in order to protect trade secrets.  A reasonable inference from that might be that the parties

15  were maintaining some kind of cooperative relationship. Another reasonable inference is that

16  ProSciento did not give Profil any reason to suspect it was doing anything improper.

17      In addition, Profil has attached two June 20, 2016 demand letter to the FAC.  (Docket

18  no. 5, Exs. A and B.)  This letter demands the return of all proprietary information, and

19  identifies the Biostator machines as well as various documents and information.  Accepting

20  these letters at face value, it would appear Profil had consented, or thought it may have

21  consented, to ProSciento's retaining the trade secrets, and had come to realize they were

22  being misappropriated.  In other words, ProSciento's retention of the Biostator machines,

23  documents, and information did not give Profil any reason for concern for some time after the

24  Cooperation Agreement was terminated.  The fact that the parties had entered in to the NDA

25  further supports this inference.

26      The reasoning ProSciento asks the Court to engage in might be acceptable at trial.

27  But the FAC simply does not provide the level of factual information that would make this

28  clear as a matter of law. ProSciento's characterization of the situation could, in the end, turn

1   out to be correct.   But when the Court has to draw this many inferences from factual

2   pleadings and supply additional facts, the running of the limitations period cannot be said to

3   appear on the face of the complaint.

4        **Pleading Standards: Fraud**

5        ProSciento cites the heightened pleading standard for fraud under Fed. R. Civ. P.

6   9(b), and argues that Claim 3, for cancellation based on fraud, is inadequately pled.

7        The Ninth Circuit has explained that "[a]ny false statements made in an incontestability

8   affidavit may jeopardize not only the incontestability claim, but also the underlying

9   registration."  *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990).  Various false

10  statements will suffice to show fraud.  See *id.* (citing examples).  *See also Halo Mgt., LLC*

11  *v. Interland, Inc.*, 308 F. Supp. 2d 1019 (N.D. Cal. 2003) (discussing standards for trademark

12  cancellation based on fraud in registration). The Court accepts as true the allegations that

13  Profil first used the mark in the U.S. in 1999, that ProSciento was created in 2003, that in

14  2008 Profil and ProSciento formally separated, and that at the time of the application Profil

15  was using the mark in U.S. commerce.  (FAC,  ¶¶ 1, 21, 30, 33.) This would make several

16  of ProSciento's statements in the 2009 application and affidavit false, most significantly the

17  representations that ProSciento was the mark's senior user, that ProSciento first used the

18  mark in 1999, and that no one else had the right to use the mark. (FAC ¶¶ 46-49.)

19       Much of ProSciento's argument depends on its status as a subsidiary of Profil.  But

20  in 2009 when it submitted the materials, the two companies had already separated and

21  ProSciento was no longer Profil's subsidiary.  ProSciento cites no authority to support its

22  contention that former subsidiaries are treated the same as current ones for purposes of

23  trademark registration.  It cites the Trademark Man. of Exam. Proc. § 903.05 (5th ed. 2007)

24  for the proposition that use by a related company can be the "first use" date (Docket no. 17-1

25  at 23:27), but this section does not stand for that proposition.  The intended citation may

26  have been § 1201.03, but even under that section, it does not appear that ProSciento was

27  a related company at the time it submitted the application.

28       The FAC alleges sufficient facts to plausibly suggest ProSciento knew these facts

1    were false, that they were material, and that the USPTO relied on them.  The facts given in

2    the FAC are specific enough to put ProSciento on notice of the particular fraudulent conduct

3    it is charged with, *i.e.*, "the who, what, when, where, and how of the misconduct charged."

4    *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

5    **Trade Secrets: Pleading Standards**

6    The Court is exercising supplemental jurisdiction over Profil's state law claims (FAC,

7    ¶ 10), and therefore applies state substantive law but federal procedural law.  *Cortez v. Skol*,

8    776 F.3d 1046, 1054 n. 8 (9th Cir. 2015). Although the parties have cited and relied on state

9    pleading standards, pleading standards are procedural, and the Court therefore applies

10   federal rather than state pleading standards.  *See Hatton v. Bank of America, N.A.*, 2015 WL

11   6739137, at *3 (E.D. Cal., Nov. 2, 2015) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

12   1097, 1103 (9th Cir. 2003)).

13   In federal court, plaintiffs seeking relief for misappropriation of trade secrets must

14   identify what they are, and should describe it with sufficient particularity to separate it from

15   either matters of general knowledge in the trade or of special knowledge of those skilled in

16   the trade.  *Imax Corp. v. Cinema Technologies, Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998).

17   While *Imax* applied the standard at the summary judgment stage, the pleading standard at

18   this stage requires only notice and plausibility.  This requirement has been applied, in a more

19   relaxed form, at the pleading stage.  In *Modus LLC v. Encore Legal Solutions, Inc.*, 2013 WL

20   6628125 at *7-8 (D. Ariz., Dec. 17, 2013), for example, the court found it adequate to allege

21   that its trade secrets consisted of software programs it created or modified and that it used

22   in the provision of its business services.

23   Significantly, Profil was the source of the trade secrets, and should know what they

24   are well enough to be able to plead a claim. This is not a case where discovery is needed,

25   or might be needed, to allege facts identifying the trade secrets.

26   / / /

27   / / /

28   **Trade Secrets: Discussion**

1       The FAC gives general categories of the things Profil considered to be trade secrets.

2  (FAC, ¶ 26.)   The first demand letter attached to the complaint also asks for those categories

3  things to be returned. (Docket no. 5 at 29-30.)  They are:

4          • Biostator machines;

5          • Standard Operating Procedures and written manuals for the Biostator
           machines to perform Glucose Clamp Studies;
6
           • methods and procedures for using the Biostator machines with the
7          appropriate pumps and tubing, and how to perform necessary maintenance
           of the machines when performing Glucose Clamp Studies;
8
           • methods and procedures for preparing clinical development plans to
9          perform clinical studies;

10         • methods and procedures for performing insulin-sensitivity assessment with
           Glucose Clamp Studies; methods and procedures in the design,
11         performance, and data analysis of clinical studies;

12         • methods and procedures for data management and analysis;

13         • database design, computer software, and procedures for implementing a
           database to manage and recruit volunteers for various clinical studies.
14

15  *Id.* The second letter repeats this information but also elaborates, explaining that Profil

16  developed the software for the purpose of analyzing results and reporting.  (Docket no. 5 at

17  34.)  The Cooperation Agreement further identifies the trade secrets.  (Docket no. 17-2, Ex.

18  A at 40-41.)

19       Some of these are not adequately differentiated from general knowledge within the

20  trade, or general public knowledge for that matter.  For example, the Biostator machines

21  themselves are identified as a trade secret.  The machines' existence and general nature is

22  not a secret, however. It may be that Profil is seeking to have the machines themselves

23  returned, or that the machines' design or some aspects of it are trade secrets.  But whatever

24  the trade secret is supposed to be is not very clear.  On the other hand, Standard Operating

25  Procedures and manuals for operating the Biostator machines seem to be materials Profil

26  authored.  The volunteer database and program codes, and their general functions are

27  described in the Cooperation Agreement.  (Docket no. 17-2, Ex. A at 41.)  But the "methods

28  and procedures" items are never very well identified, nor are the aspects of them that amount

to trade secrets adequately differentiated from what is more generally known.  Clearly, others in the industry who perform the same or similar functions use methods and procedures as well. Whatever it is that distinguishes the trade secrets from those should be adequately identified.   For example, the FAC does not make clear whether Profil created these procedures or modified existing procedures, or whether the procedures are generally known or used within the industry.

The Court concludes that the Standard Operating Procedures and written manuals for the Biostator machines to perform Glucose Clamp Studies; and computer software, and procedures for implementing a database to manage and recruit volunteers for various clinical studies are adequately identified.  The Biostator machines are adequately identified only if the FAC is seeking return of the machines themselves; otherwise, they are not. The remainder are not adequately identified.

Because not all of the trade secrets are adequately identified, it is difficult to say whether Profil took adequate steps to maintain their status as trade secrets.  In some cases, it will be clear as a matter of law that the precautions were inadequate.  But the FAC and the agreements make clear Profil took some steps, and their briefing points those out. (See FAC ¶ 27; Docket no. 17-2, Ex. A at 42, ¶ 11 and Ex. C at 1, ¶ 4) Whether those steps were reasonable under the circumstances is a question of fact that is appropriately resolved either at the summary judgment stage or trial.  *See Learning Curve Toys, Inc. v. PlayWood Toys*, *Inc.*, 342 F.3d 714, 724-25 (7th Cir. 2003) (whether measures taken to protect trade secrets were reasonable is generally a question of fact for the jury, and only in extreme cases can be decided as a matter of law).

**Conclusion and Order**

The motion to dismiss is **GRANTED IN PART and DENIED IN PART**.  The Court finds the FAC adequately identifies only some of the trade secrets.   Claims regarding misappropriation of the Standard Operating Procedures and written manuals for the Biostator machines to perform Glucose Clamp Studies; and computer software, and procedures for implementing a database to manage and recruit volunteers for various clinical studies are

adequately pled.  Assuming Profil is seeking return of the Biostator machines, they are adequately identified as well; but otherwise, that portion of the claim is not adequately pled. The remainder of the trade secrets are not adequately identified, and to the extent the misappropriation claim concerns those trade secrets, it is **DISMISSED WITHOUT PREJUDICE**.  But because it is very likely Profil can successfully amend, it may do so within **21 calendar days of the date this order is issued**.

In all other respects the motion to dismiss is **DENIED**.


**IT IS SO ORDERED**.

DATED: March 31, 2017

_Larry A. Burns_

**HONORABLE LARRY ALAN BURNS**
United States District Judge