# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROFIL INSTITUT FUR STOFFWECHSELFORSCHUNG GMBH,<br><br>Plaintiff,<br><br>v.<br><br>PROSCIENTO, INC.,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No.: 16cv1549-LAB (BLM)<br><br>**ORDER RE: PROPOSED PROTECTIVE ORDER**<br><br>**[ECF No. 64]** |

On June 12, 2017, the parties advised the Court that they had a dispute concerning the Protective Order that they were negotiating. The Court instructed the parties to lodge their letter briefs before the Telephonic Case Management Conference ("TCMC") scheduled for June 14, 2017. See ECF No. 65. The parties lodged the briefs as instructed by the Court but, due to the large number of disputes, the Court was not able to resolve the issues during the TCMC so the Court took the matter under submission. The Court has reviewed and considered Plaintiff's letter brief concerning the Proposed Protective Order [Exh. A attached to this order ("Pl.'s Mot.")], Defendant's "Memorandum in Support of ProSciento's Proposed Protective Order" [ECF No. 64 ("Def.'s Mot.")], the Proposed Protective Order ("Proposed P.O.") with the parties'

1

proposed edits [Def.'s. Mot., Exh. B], Plaintiff's "Memorandum of Points and Authorities in Opposition to ProSciento's Proposed Protective Order" [ECF No. 70 ("Pl.'s Oppo.")], and Defendant's "Reply in Support of ProSciento's Proposed Protective Order" [ECF No. 72 ("Def.'s Reply")].

## DISCUSSION

**A. Federal Rules of Civil Procedure v. Foreign Data Privacy Laws [Paragraphs 1(g); 21(f); 21(g)]**

The parties disagree on the applicability of foreign data privacy laws. Defendant seeks to include a clause in Paragraph 1(g) stating that foreign data privacy laws "shall not be asserted as[] grounds to deny or refuse to search for or produce any relevant discovery in these Actions, as the parties' discovery obligations shall be governed by the United States Federal Rules of Civil Procedure." See Proposed P.O. at 43. Defendant also wants to add Paragraph 21(f), requiring that all disputes regarding the order "be governed by California law, without regard to California choice-of-law provisions," and 21(g), requiring that the Federal Rules of Civil Procedure "govern the Actions." See id. at 62-63.

Plaintiff opposes the language proposed by Defendant. Pl.'s Mot. at 3-5. Plaintiff argues that as a German company it is required to comply with European Union ("EU") and German data privacy laws. Id. at 1; Pl.'s Oppo. at 20. Plaintiff alleges that European data privacy laws impose strict guidelines for the collection and transfer of personal data outside the EU and broadly define "personal data" as "any information relating to an identified or identifiable natural person." Pl.'s Mot. at 3 (citing Directive 95/46/EC of the European Parliament and of the Council of 24 October 1995 ("Directive")); Pl.'s Oppo. at 20. Plaintiff further contends that noncompliance with these laws can result in serious liability, which may include criminal

penalties. Pl.'s Mot. At 3; Pl.'s Oppo. at 20. Plaintiff explains that there are three relevant exceptions for the legal transfer of personal data from Germany to the United States: (1) with consent of the data subject, (2) where all persons receiving transferred data agree to be bound by the Standard Contractual Clauses, and (3) where the data transfer is necessary for the establishment, exercise, or defense of legal claims. Pl.'s Oppo. at 21; ECF NO. 70-1, Declaration of Mr. Andreas Endemann In Support of Profil's Opposition to ProSciento's Proposed Protective Order ("Endemann Decl.") at 4.

With respect to consent, Plaintiff states that it expects to obtain consent from all its key personnel, but is unsure it will be able to obtain consent "from all parties, including third-parties, located in the EU that may be implicated by [Defendant's] discovery requests." Pl.'s Oppo. at 21. Plaintiff also warns that some of its employees may withdraw or refuse to give consent. Id. As to the third exception, Plaintiff asserts that personal data can be transferred if necessary for the establishment, exercise, or defense of legal claims and personal data is only "necessary" if it is the least severe means of achieving the purpose. Id. at 22; Edemann Decl. at 6. Plaintiff also explains that, pursuant to the second exception, it believes it is compelled by its obligations under EU law to ask the Court to require all recipients of personal data to be bound by the Standard Contractual Clauses. Pl.'s Oppo. at 22-23; Edemann Decl. at 5.

Plaintiff also argues that Federal Rule of Civil Procedure ("FRCP") 26 vests federal courts with discretion to limit discovery on the ground of international comity. Pl.'s Mot. at 4; Pl.'s Oppo. at 18. Plaintiff states that a court conducting a comity analysis is required to balance several factors related to the specific request and information at issue, including, *inter alia*, the importance of the documents to the litigation, the degree of specificity of the request, whether the information originated in the United States, the availability of alternative means of securing

the information, and the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located. Pl.'s Mot. at 4-5; Pl.'s Oppo. at 19. Plaintiff argues that in this case and at this stage of litigation, such analysis is premature because "there is no actual request at issue." Pl.'s Mot. at 4-5; see Pl.'s Oppo. at 19-20.

Defendant argues that the Federal Rules should govern this action. Def.'s Mot. at 3-10; Def.'s Reply at 3-5. Defendant asserts that Plaintiff waived foreign procedures by suing in the U.S. under the U.S. law. Def.'s Mot. at 4-6; Def.'s Reply at 3. Defendant further contends that even if foreign law applied, Plaintiff has not demonstrated that foreign law bars production of relevant discovery in this case. Def.'s Mot. at 6-10; Def.'s Reply at 3-5. Defendant argues in support that (1) even under foreign law, exceptions allow Plaintiff to transfer purportedly protected "personal data," (2) courts consistently have held that the Federal Rules of Civil Procedure do not conflict with EU and German data protection laws and have compelled German parties to produce discovery pursuant to the FRCP because compliance with U.S. discovery obligations does not create a genuine risk of liability under EU or German law, and (3) comity favors the application of the FRCP in light of the U.S.' overriding interest in ensuring fair play for U.S. companies sued in the U.S. Def.'s Mot. at 6-10; Def.'s Reply at 3-5. Defendant emphasizes that it is not seeking the discovery of "personal data" that Plaintiff alleges is protected, and claims that it is entitled to discovery that "*incidentally contains* personal data, including relevant emails and text messages, which by virtue of their 'to' and 'from' fields, could theoretically fall under the aegis of foreign data protection laws." Def.'s Mot. at 4 (emphasis in original) (citing Directive, Art. 2(a) (protecting "any information relating to an identified or identifiable natural person").

Because the issue currently before the Court is the appropriate language for a protective order governing the disclosure of confidential information and not a dispute regarding specific discovery, the Court declines to adopt the broad language requested by Defendant. In paragraph 1(g), the Court will include the following language: "Such rules shall not be asserted as grounds to refuse to search for any relevant discovery in these Actions." While the Court declines to include in the protective order the additional language requested by Defendant, the Court notes that the Federal Rules of Civil Procedure govern discovery and case management in this action. If any party disagrees with respect to any specific piece or type of discovery, the party must file an appropriate motion seeking a modification or exemption. Moreover, if Plaintiff believes that it cannot produce relevant documents or information due to a privilege or other requirement, Plaintiff must notify Defendant in writing of the documents or information being withheld and the basis for the withholding. See Paragraphs 9(b) & 17. If Defendant disagrees, the parties must meet and confer in good faith in an effort to resolve the matter and if they are unable to do so, counsel must comply with the Court's Chamber Rules regarding discovery disputes.

**B.     Information that May be Designated as "Highly Confidential–Outside Counsel's Eyes Only" ("OCEO") [Paragraphs 9(a) & (b)]**

### (1)    Trade Secrets

Plaintiff proposes to include the following language in Paragraph 9(a): "A Producing Party may designate Discovery Material as 'HIGHLY CONFIDENTIAL–OUTSIDE COUNSEL'S EYES ONLY' if the Producing Party believes in good faith that it contains or reflects trade secret(s), as defined in the Uniform Trade Secrets Act and California Civil Code 3426-3426.11, or that it contains or reflects information that is extremely confidential and/or sensitive in nature such

that the disclosure of such Discovery Material is likely to cause economic harm or significant competitive disadvantage to the Producing Party." Proposed P.O. at 51-52; Pl.'s Oppo. at 9-11. Alternatively, Plaintiff requests the Court adopt language allowing the designation ". . . only if, in the good faith belief of such party and its counsel, the information is among that considered to be most sensitive by the party, including but not limited to trade secret or other confidential research, development, financial or other commercial information." Pl.'s Oppo. at 10. Defendant proposes to define "Highly Confidential–OCEO" information as limited to "trade secret(s), as defined in the Uniform Trade Secrets Act and California Civil Code 3426-3426.11" that have not been alleged to have been misappropriated by the other Party. Proposed P.O. at 51-52; Def.'s Mot. at 10-13. Defendant also proposes adding the following language: "To resolve any doubt: information that a party alleges was misappropriated will, if designated at all, be designated as 'Confidential,' or 'Highly Confidential,' but may not be designated 'Highly Confidential—Outside Counsel's Eyes Only." Id.

Plaintiff contends that Defendant's proposed language is too narrow and would expose Plaintiff to competitive harm if it were forced to disclose extremely sensitive information to Defendant. Pl.'s Mot. at 5; Pl.'s Oppo. at 10. Plaintiff further asserts that its proposed language tracks the Court's Model Protective Order for patent cases ("Model P.O."), Paragraph 2.8, which states: "'HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY' information or Items: extremely sensitive 'Confidential Information or Items,' disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.'" Pl.'s Mot. at 5; Pl.'s Oppo. at 10. Plaintiff contends that the parties are direct competitors, and that courts have recognized the danger of sharing trade secret information with employees of a direct competitor. Pl.'s Mot. at 6. Plaintiff asserts that Defendant's proposed

language would allow Defendant's employees, including competitive decision makers, to access Plaintiff's "extremely valuable" trade secrets and deprive Plaintiff of its competitive advantage. Pl.'s Mot. at 6; see Pl.'s Oppo. at 12. Plaintiff further contends that Defendant may no longer have some of the allegedly misappropriated trade secrets in its possession, and may misuse trade secrets not already in its possession to compete against Plaintiff. Pl.'s Mot. at 6; Pl.'s Oppo. at 12. Plaintiff claims that its proposed language would only restrict Defendant's access to documents produced under the appropriate designation, and that to the extent Defendant already has the alleged trade secrets in its possession, its employees would be able to review that information in assisting with the defense. Pl.'s Mot. at 6; Pl.'s Oppo. at 12-13.

Defendant argues that Plaintiff's alleged trade secret information should not be designated as OCEO because it would prevent Defendant from accessing the case's most essential information, the data that Defendant allegedly already has seen and used for years. Def.'s Mot. at 10-13; Def.'s Reply at 4-8. Defendant notes that Plaintiff alleges in this case that it "authorized" Defendant to use trade secret information during the period of 2009-2012, when the parties' Cooperation Agreement was in effect, and that Defendant misappropriated the information after the parties started to compete against each other. Def.'s Mot. at 10-11. Defendant claims that it only wants to "carve out" the information that Plaintiff alleges forms the basis of its misappropriation claim, so that Defendant may know the claims asserted against it and meaningfully defend against such claims. Id. at 10, 12. Finally, Defendant argues that Plaintiff has not satisfied its burden of proof to establish the need for this level of protection and that its due process rights would be violated by Plaintiff's proposal. Def.'s Reply at 6-8.

The Court agrees with Defendant that information or data that Plaintiff claims Defendant misappropriated should not be designated OCEO. On the other hand, the Court agrees with

7

16cv1549-LAB (BLM)

Plaintiff that there may be extremely sensitive or confidential documents that need OCEO in this litigation between direct competitors. The Court therefore modifies paragraph 9(a) to incorporate both concerns.

**(2) "Protected Personal Data"**

The parties dispute whether the protective order should allow designation of protected personal information as OCEO. Plaintiff proposes the following language:

> Because Protected Personal Data constitutes highly sensitive materials requiring special protection, to the extent production of such Protected Personal Data becomes necessary to the prosecution or defense of the case, a Producing Party may designate such Protected Personal Data as "HIGHLY CONFIDENTIAL– OUTSIDE COUNSEL'S EYES ONLY." To facilitate the production of such Protected Personal Data, and ensure each Party's compliance with European data privacy laws, prior to the production of Protected Personal Data, each Party will agree to be bound by, and execute a copy of, the European Commission's "Standard contractual clauses for the transfer of personal data from the Community to third countries (controller to controller transfers)" attached hereto as Exhibit B.

See Proposed P.O. at 52. Plaintiff claims that the European Commission has created guidelines for the permissible transfer of protected personal data, and that the parties' protective order should thus require the parties to designate protected personal information as OCEO. Pl.'s Mot. at 7; Pl.'s Oppo. at 20-23; Endemann Decl. at 4-6.

Defendant proposes to strike the above language and argues that the parties should not be allowed to designate protected personal information as OCEO. See Def.'s Mot. at 8; Proposed P.O. at 52; Def.'s Reply at 3-4. In support, Defendant contends that foreign law does not require the designation of all "protected data" as OCEO and that Plaintiff has not established the need for this designation as to all Protected Personal Data. Def.'s Mot. at 8; Def.'s Reply at 3-4. Defendant claims that Plaintiff could "hamstring [Defendant's] defense by designating large swaths of discovery" as OCEO, thereby denying Defendant's counsel "valuable insights from

[Defendant's] personnel, who would not be permitted to view such documents, or to participate fully in their own defense." Def.'s Mot. at 8.

The Court agrees with Defendant, declines to adopt Plaintiff's language, declines to require the parties to sign the European Commission's "Standard contractual clauses for the transfer of personal data from the Community to third countries (controller to controller transfers)" as part of this United States litigation, and holds that Protected Personal Data should not be designated as OCEO. While Plaintiff's opposition and Mr. Endemann's declaration explain the limitations and requirements associated with the production of Protected Personal Data in the EU, they do not establish that all such data cannot be produced in this litigation absent an OCEO designation or that such a designation eliminates all production concerns. See Pl.'s Oppo. at 20-23; Entemann Decl. at 4-6. If Plaintiff subsequently determines that a particular piece of Protected Personal Data needs greater protection, Plaintiff must comply with paragraphs 9(b) and 17 of the Protective Order and the Court's Chamber Rules and then file a motion seeking the additional protection.

**C. Identification of Employees and In-House Counsel with Access to Confidential Information [Paragraphs 10, 7(b), 8(b), and 9(d)]**

The parties dispute whether a Receiving Party should provide notice of the employee(s) to whom it will disclose the Protected Materials pursuant to the notice and right-to-object requirements in Paragraph 10. Plaintiff proposes that the notice and pre-authorization requirements apply to any disclosure of Protected Materials to a party's employee(s). See Pl.'s Mot. at 8; Proposed P.O; Pl.'s Oppo. at 14. In support, Plaintiff contends that the parties have agreed to provide notice under Paragraph 10 before Protected Materials are disclosed to *outside* consultants and experts, and that there is no reason to treat employees of a Receiving Party

differently from outside experts. Pl.'s Mot. at 8; Pl.'s Oppo. at 14. Plaintiff further asserts that because the parties are direct competitors, the danger that Protected Materials could be misused for competitive advantage is much greater with respect to employees of a direct competitor. Pl.'s Mot. at 8; Pl.'s Oppo. at 14. Plaintiff also maintains that the Court's Model Protective Order contemplates that the parties will identify in-house counsel before they receive protected information by including a blank space for the identification of such individuals and does not contemplate that party employees would ever have access to OCEO information. Pl.'s Mot. at 8 (citing Model P.O., Paragraph 3); Pl.'s Oppo. at 15. In the alternative, Plaintiff requests that if the court finds the employees of a Receiving Party "should ***under no circumstances*** be granted access to a Producing Party's OCEO information . . . , then [Plaintiff] would consent to removing the notice requirements with respect to a Receiving Party's employees as set forth in paragraph 7.b.ii-iii. and 8.b.ii." Pl.'s Oppo. at 15 (emphasis in original).

Defendant argues that Plaintiff's proposed notice and consent provision is unjustified and prejudicial. Def.'s Mot. at 14-16. Defendant acknowledges that it agreed to the provision requiring the parties to give notice and await consent before revealing protected materials to *outsiders*. Id. at 14. Defendant claims, however, that applying the same procedure to *insiders*, including the parties' officers, employees, and designated party representatives, would allow Plaintiff to "control everyone that views its produced materials," and unjustifiably interfere with Defendant's litigation management and strategy. Id. Defendant also claims that the parties already have agreed to other less intrusive mechanisms for protecting confidential information, such as requiring a person to whom Protected Material is disclosed to agree in writing to be bound by the Protective Order and allowing disclosure of Protected Material to officers and

employees only to the extent reasonably "necessary" for the prosecution of the case. Id. at 15-16 (citing Proposed P.O., Paragraphs 7(iii) & 8(ii)).

The Court finds that the notice and right to object requirements in paragraph 10 do not apply to current employees, however, current employees are required to sign the Exhibit A in which they agree to comply with the terms of the Protective Order. In accordance with this ruling, the Court denies Plaintiff's request to include the notice language in paragraphs 7(b)(ii)-(iv) and 8(b)(ii).

**D.     Designation of Party's Employees as Experts or Consultants [Paragraphs 7(b)(iv), 8(b)(iii), 9(c)(ii), 20(e)]**

The parties dispute whether they may designate their own employees as experts and consultants, and provide them with access to Protected Material under the protective order. Plaintiff proposes to add Paragraph 20(e) stating that "No designated expert or consultant given access to Protected Material under any provision(s) of this Order may be an employee of a Party." Pl.'s Mot. at 8-9; Pl.'s Oppo. at 16. Plaintiff argues that permitting such disclosure to its direct competitor's employees would create a substantial risk of competitive harm. Pl.'s Mot. at 9; Pl.'s Oppo. at 16. Plaintiff cites Paragraph 8(b)(ii) of the Proposed P.O., which would limit the number of corporate representatives given access to the other party's Highly Confidential information to three or four, and argues that the requirement would be meaningless if a party could designate its employees as experts under Paragraph 8(b)(iii). Pl.'s Mot. at 9; Pl.'s Oppo. at 16. Plaintiff further asserts that the OCEO designation would be rendered meaningless if the parties could designate their own employees as experts. Pl.'s Mot. at 9; Pl.'s Oppo. at 16. Plaintiff contends that this will not impair Defendant's defense because Defendant's employees may testify as party employees, Defendant can find a suitable non-employee expert,

and Defendant may move to compel disclosure of specific confidential information if the need arises. Pl.'s Oppo. at 17.

Defendant contends that select party employees should be permitted to offer expert opinions and that FRCP allow the use of in-house experts. Def.'s Mot. at 13-14 (citing FRCP 26(a)(2)(B)); Def.'s Reply at 8-9. Defendant argues that this case involves a "small, highly specialized market" where the parties are key players, and that its in-house expertise is crucial to its defense. Def.'s Mot. at 13; Def.'s Reply at 8-9. Defendant alleges that its employees are experts on trade secrets, already have access to the alleged trade secrets, and possess highly specialized knowledge relevant to the instant litigation. Def.'s Mot. at 13. Defendant further contends that it is unlikely that it will be able to find an expert witness with equivalent knowledge, and even if it does, it will be forced to incur significant costs associated with retaining outside experts. Id. at 14.

The Court finds Plaintiff has not provided justification to modify the FRCP and prevent employees from being designated as expert witnesses and the Court therefore declines to adopt the language proposed by Plaintiff.

**E.     Additional Requested Modifications**

Defendant identified additional requested modifications in its red-lined protective order. The Court grants the modifications set forth in paragraphs 1(d), 8(a), 8(b)(ii), 10(a), 14, 15, 15(c), 18, and 20(c) and denies the modifications set forth in paragraph 10(b). The Court denies the requested modifications set forth in paragraphs 20(a) and 21(f)-(h) on the grounds that the parties did not agree on the modifications and the requested modifications are premature and more appropriately resolved in the context of an actual discovery dispute, if one develops.

///

## **SUMMARY AND CONCLUSION**

For the foregoing reasons, the Court enters the Protective Order attached as Exhibit B to this Order.

**IT IS SO ORDERED.**

Dated: 7/3/2017

Hon. Barbara L. Major
United States Magistrate Judge

# EXHIBIT A